IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RODRIGO F. GONZALEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:11-cv-147 (AJT/IDD) |
| ) | |
| HOGG INSURANCE GROUP, INC. *et al.*, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OPINION

In this employment discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, plaintiff Rodrigo Gonzalez has filed a Complaint (Doc. No. 1) against his former employer, Hogg Insurance Group, Inc. ("HIG"), alleging "unlawful termination of employment" based on "events that transpired beginning of 4/23/2008[,]" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e-2 *et seq.* ("Title VII"). Compl. at 1.[1] The plaintiff alleges (1) that he was "subjected . . . to disparate treatment and harassment . . . solely due to [religion] protected under [Title VII]"; (2) that he was

---

[1] In the Complaint, the plaintiff named both HIG, and Edward Hogg ("Hogg"), the president of HIG, in his individual capacity or as a supervisor of Gonzalez at HIG. On April 11 and 12, 2011, each defendant moved to dismiss the plaintiff's claims (Doc. Nos. 9 and 13) pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and also pursuant to 12(b)(6) for failure to state a claim, and for failure to comply with Rule 8(a)(2). By order dated May 3, 2011 (Doc. No. 19), the Court granted HIG's motion as to paragraph 1 of the Complaint, which the Court denied on the basis that, even when liberally construed, it failed to state a claim; the Court denied defendant HIG's motion as to the remainder of the Complaint, finding that the allegations, when construed liberally, stated a claim against HIG, specifically, that HIG acting willfully and maliciously, discriminated against and then terminated the plaintiff from his employment because of his religion, and that as a result the plaintiff has suffered damages. The Court granted Hogg's motion, finding that the Complaint, even when construed liberally, does not state a claim against Hogg, in his individual capacity, since he was not the plaintiff's employer, and therefore, pursuant to *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177 (4th Cir. 1998), as a matter of law has no personal liability under Title VII. *See* Doc. No. 19.

unlawfully terminated "because of plaintiff's religion"; (3) that his employer "failed to make an attempt to accommodate plaintiff's religious needs"; and (4) that his employer's unlawful activity "continued even after the employment relationship ended" by "forbid[ding] anyone within the realm of his business from being used as a reference for future employment, thus making the prospects of a future position even more difficult and in at least one instance, ensuring that plaintiff was not hired . . . ." Compl. at ¶¶ 2-4. The plaintiff further alleges that "[a]s a direct, foreseeable and clearly obvious result of defendant's wrongful acts," he has suffered and continues to suffer "substantial losses" of earnings and benefits, and mental and emotional distress. *Id.* at 2. Through this action, the plaintiff seeks compensatory damages in the form of back pay, future loss wages, loss of benefits, and emotional distress, totaling $58,263.40; punitive damages "in a sum sufficient to deter as allowed by law"; attorney's fees and "costs of suit incurred"; and injunctive relief requiring the defendant to "openly espouse his disdain for anything remotely close to religion and/or God within the premises of his business by posting a very visible sign that echoes his very sentiment." *Id.* at 2-3. Presently pending are Defendant's Motion for Summary Judgment (Doc. No. 51), and Plaintiff's Motion for Partial Summary Judgment (Doc. No. 54). Upon consideration of the Motions, the memoranda and exhibits in support of each, and the memorandum and exhibits filed in opposition to each, the Court finds that there are no triable issues of material fact, and that Hogg is entitled to Judgment as a matter of law.

## BACKGROUND

A. **Factual Background**

The facts, viewed in the light most favorable to plaintiff, are as follow.

Rodrigo Gonzalez was hired by TLC Payroll Plus Corporation on August 13, 2007.

2

Gonzalez was leased to Hogg Insurance Group, Inc., as an assigned employee under an agency service agreement; he was to work as a licensed insurance agent. *See* Ex. A to Def.'s Mem. (Aff. of Edward Hogg) at 1. Gonzalez was initially assigned to HIG's Falls Church office. *Id.*

Within one month of being hired, a customer filed a complaint against Gonzalez, alleging that he asked the customer if she had a "mental illness." *Id.* Gonzalez was asked to apologize but he refused to do so. *Id.*

In the summer or autumn of 2008, when Hogg arrived at the Falls Church office for a scheduled meeting with Gonzalez and another employee, Hogg found Gonzalez reading a book. *Id.*; Ex. 3 to Pl.'s Opp'n at 1. This was not the first time Gonzalez was observed reading books or internet news sites at work. Ex. A to Def.'s Mem. at 1. On that date, Hogg had a conversation with Gonzalez about the appropriate use of company time. *Id.*

On or before October 2, 2008, Ricardo Cubillos ("Cubillos"), the office manager in Falls Church, had a discussion with Gonzalez about Gonzalez's handling of service work. *Id.*; Pl.'s Opp'n at 2. On October 2, 2008, Gonzalez sent an email to Cubillos stating that he was "striv[ing] to be an average sales person, and that is what [I] am. Nothing will change that and any efforts to try and change that will only have negative repercussions on all parties involved." *See* Ex. E to Def.'s Mem. (Email from Rodrigo Gonzalez to Ricardo A. Cubillos (Oct. 2, 2008)).

On October 9, 2008, HIG discovered that Gonzalez had accessed confidential company files relating to Plaxico Burress, the professional football player, and forwarded the access code to a co-worker, who reported the incident to Hogg. *See* Ex. F to Def.'s Mem. (Email from Joao Pereira to Edward Hogg, Ricardo A. Cubillos (Oct. 9, 2008)); Ex. C to Def.'s Mem. (Aff. of

Ricardo A. Cubillos), at 1; Ex. A to Def.'s Mem., at 2; Ex. 3 to Pl.'s Opp'n at 3.[2]

On October 22, 2008, a customer filed a complaint against Gonzalez, alleging that Gonzalez had been "rude, disrespectful, and sarcastic." *See* Ex. G to Def.'s Mem. (Email from Ricardo A. Cubillos to Edward Hogg (Oct. 22, 2008)); Ex. A to Def.'s Mem., at 2.

In October 2008, one of Gonzalez's co-workers, Virginia Pierson, asked that Gonzalez be transferred because, according to Pierson, Gonzalez was "acting in an erratic and strange way in the office." *See* Ex. D to Def.'s Mem. (Aff. of Virginia Pierson), at 2.

Gonzalez was moved to Fairfax "[a]fter the October 22 incident . . . so that he could be more closely monitored." *See* Ex. A to Def.'s Mem. at 2.[3]

On November 11, 2008, the plaintiff addressed Hogg with a statement that was overtly religious; the parties dispute the precise content of the statement, but not its religious nature. *See* Ex. A to Def.'s Mem. at 2 ("[O]n Tuesday, November 11, 2008, when Mr. Gonzalez first reported to work, he stood in the hallway outside [Hogg's] office . . . and loudly stated 'God will deal with those who have multiple offices.'"); Ex. 3 to Pl.'s Opp'n at 4 ("On the morning of November 11, 2008, [the Plaintiff] greeted [Hogg] with 'good morning, grace to you, your soul is worth more than your agencies.'").

Later on November 11, 2008, in response to the plaintiff's religious statement, Hogg told the plaintiff not to bring religion into the office. *See* Ex. A to Def.'s Mem. at 2 ("I told Mr.

---

[2] The plaintiff disputes that the files were confidential, asserting that "Plaintiff, as a licensed individual appointed BY Allstate had access to all of Allstate's customers as did the party receiving the email," Pl.'s Opp'n at 3.

[3] While Defendant's Memorandum states that Hogg transferred Gonzalez from the Falls Church to the Fairfax location of HIG as a result of the October 22, 2008 customer complaint and the October 2008 complaint by Pierson, Hogg does not actually state in his affidavit that either complaint, or any other specific incident, was the reason Gonzalez was moved. *See* Ex. A to Def.'s Mem. at 1-2; Ex. D to Def.'s Mem. at 2.

4

Gonzalez that we do not bring religion or politics into the office. . . . Mr. Gonzalez then repeated his statement. At that point I told him that his statements were inappropriate and asked him if he was intending to be fired."); Ex. 3 to Pl.'s Opp'n at 4 (Hogg "said 'do not bring religion or politics into this . . . office. If you spout another word, I will have you sign a [termination] form and you are . . . out of here.'").

At the end of the workday on November 11, 2008, Hogg told the plaintiff that he was terminating plaintiff's employment. *See* Ex. A to Def.'s Mem. at 2; Ex. 3 to Pl.'s Opp'n at 4.

Although the plaintiff asserts that Hogg forbid employees of HIG from providing a reference for the plaintiff, there is no evidence in the record of this. *See generally* Ex. A to Def.'s Mem.; Ex. 3 to Pl.'s Opp'n. The plaintiff offers the unsupported assertion that Cubillos "personally gave [the plaintiff's subsequent employer a] reference without knowledge or approval from Mr. Hogg." *See* Ex. 3 to Pl.'s Opp'n at 4.

**B.    Procedural Background**

On March 5, 2009, the plaintiff filed a Charge of Discrimination with the Fairfax County Human Rights Commission ("FCHRC"). In the Charge of Discrimination, the plaintiff alleged that he was discriminated against based on his religion, which the plaintiff noted as "Christian," in violation of Title VII. *See* Ex. 1 to Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss (Doc. No. 10-1). The plaintiff alleged that he was "asked to participate in unethical behavior but [he] refused to do so because of [his] religious beliefs" and "therefore [he was] treated differently from [his] coworkers and then was terminated . . . ." *Id.* at 2. A Notice of Charge of Discrimination dated March 25, 2009, was sent to Hogg as the owner of HIG. *Id.* at 1. By letter dated July 27, 2010, the FCHRC notified Hogg and HIG that the FCHRC had "completed it investigation" of the plaintiff's charge of discrimination and "concluded that there is insufficient

evidence to support the allegations therein." *See* Ex. 2 to Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss (Doc. No. 10-2). FCHRC further noted that it had closed the plaintiff's case. *Id.*

At some point, the plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Ex. 3 to Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss (Doc. No. 10-3). On January 18, 2011, the EEOC sent the plaintiff a Dismissal and Notice of Rights, advising him that the EEOC was "closing its file on this charge" because it had "adopted the findings of the state or local fair employment practices agency that investigated this charge." *Id.*

This action was filed on February 14, 2011. Hogg and HIG were served on March 21, 2011. On April 11, 2011, HIG filed a motion to dismiss, along with a Roseboro notice (Doc. No. 9); on April 12, 2011, Hogg filed a motion to dismiss, along with a Roseboro notice (Doc. No. 13). Both motions asserted that the plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, pursuant to 12(b)(6) for failure to state a claim, and for failure to comply with Rule 8(a)(2). *See generally* Def. HIG's Mot. to Dismiss; Def. Hogg's Mot. to Dismiss. Plaintiff filed timely oppositions to the motions (Doc. Nos. 16 and 17). By order dated May 3, 2011 (Doc. No. 19), the Court granted HIG's motion as to paragraph 1 of the Complaint and denied defendant HIG's motion as to the remainder of the Complaint, finding that the allegations, when construed liberally, stated a claim against HIG, specifically, that HIG acting willfully and maliciously, discriminated against and then terminated the plaintiff from his employment because of his religion, and that as a result the plaintiff has suffered damages. As to Hogg's motion, the Court concluded that the Complaint, even when construed liberally, does not state a claim against Hogg, in his individual capacity, since he was not the plaintiff's employer, and therefore, pursuant to *Lissau v. Southern Food Service, Inc.*, 159 F.3d

177 (4th Cir. 1998), has no personal liability under Title VII as a matter of law. *See* Doc. No. 19.

On May 11, 2011, defendant HIG filed an Answer to the Complaint. Doc. No. 22. Discovery concluded on October 14, 2011. Doc. No. 27. A trial was scheduled to begin on January 4, 2012. Doc. No. 47. By Order dated December 13, 2011, the Court vacated the trial scheduled for January 4, 2012, pending the Court's consideration of the instant motions. Doc. No. 62.

C.   **Defendant's Motion for Summary Judgment**

In its motion for summary judgment, defendant HIG argues that the plaintiff has failed to establish a prima facie case of discrimination on the basis of religion; that the plaintiff was not performing at a satisfactory level; that the plaintiff never notified Hogg or HIG that his religious beliefs conflicted with a requirement of his employment, nor did he request an accommodation of his religious conduct; and that even if the plaintiff had made a prima facie case of discrimination, he has not presented evidence from which a reasonable fact finder could conclude that the defendant's proffered explanation for terminating the plaintiff was a pretext for discrimination, that is, that the proffered reason was false and that discriminatory animus was the real reason the defendant terminated the plaintiff. *See generally* Def.'s Mem. at 9-12. In his opposition, the plaintiff argues that the defendant's motion is supported primarily by affidavits which contain hearsay, disputes some of the facts described in the affidavits, and appears to dispute that his performance was less than satisfactory. *See generally* Pl.'s Opp'n.

D.   **Plaintiff's Motion for Partial Summary Judgment**

The plaintiff has also filed a motion for partial summary judgment, wherein the plaintiff states that HIG "is liable for the actions taken by its supervisor, Edward Hogg, which included disparate treatment, discriminatory discharge/unlawful termination, failure to attempt to

7

accommodate, and harassment because of religion[,]" and by which the plaintiff seeks "an order granting *partial summary judgment* on the grounds of harassment." *See* Pl.'s Br. in Supp. of Mot. for Part. Summ. Judg. at 1 (emphasis in original). In his motion, the plaintiff argues that the defendant is "vicariously liable" for the "unlawful harassment" to which the plaintiff alleges he was subjected by Hogg. *Id.* at 3. The plaintiff further argues that Hogg's statement to him that the plaintiff not bring religion into the workplace followed by asking the plaintiff if he was intending to be fired "can be equated with 'coercing an employee to abandon, alter, or adopt a religious practice as a condition of avoiding an adverse action'" under *Venters v. City of Delphi*, 123 F.3d 956, 964 (7th Cir. 1997). *Id.* at 2, 4. In its opposition, the defendant argues that the plaintiff "presents no evidence that Mr. Hogg had knowledge of his religious beliefs," and that "no rational fact finder could conclude that Defendant's action was discriminatory." *See* Def.'s Opp'n at unnumbered pages 4-5.

## STANDARD OF REVIEW

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary

judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## ANALYSIS

Title VII makes it "an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion[,]" 42 U.S.C. § 2000e-2(a)(1), "unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business," *id.* at § 2000e(j). *See also EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977) ("[A]n employer has a statutory obligation to make reasonable accommodation for the religious observance of its employees, short of incurring an undue hardship."). For the purposes of Title VII, the term "religion" is defined to "include[] all aspects of religious observance and practice, as well as belief . . . ." 42 U.S.C. § 2000e(j).

Courts have recognized two theories underlying claims of religious discrimination:

9

"disparate treatment" and "failure to accommodate." *See Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996). To prove a claim under the disparate treatment theory, an employee must demonstrate that his employer treated him differently than other employees because of his religion. *Id.*

Under either theory of religious discrimination, a plaintiff may use either of two methods for establishing a claim of employment discrimination. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983). A plaintiff may meet his burden under the ordinary standards of proof by direct or circumstantial evidence that religious discrimination motivated the employer's adverse employment decision. *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004); *EEOC v. Clay Printing Co.*, 955 F.2d 936 (4th Cir. 1992). *See also Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Under this mode of proof, a plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Rhodes v. FDIC*, 257 F.3d 373, 391-92 (4th Cir. 2001) (quoting *Fuller v. Phillips*, 67 F.3d 1137, 1142 (4th Cir. 1995)).

Alternatively, if such evidence of discriminatory animus is not available, a plaintiff may prove discrimination in accordance with the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). *See, e.g., Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558-559 (4th Cir. 2011). The *McDonnell Douglas* framework contemplates a burden-shifting regime where the plaintiff bears the initial burden of pleading a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. The required elements of a prima facie case are different for a claim brought under the disparate treatment theory and one brought under the failure to accommodate

theory. To establish a prima facie case of discriminatory discharge under the disparate treatment theory, a plaintiff must "(1) prove that his job performance was satisfactory, and (2) present direct or indirect evidence whose cumulative probative force supports a reasonable inference that his discharge was discriminatory." *Lawrence v. Mars, Inc.*, 955 F.2d 902, 905-06 (4th Cir. 1992). If the plaintiff establishes a prima facie case, the burden shifts to the defendant employer to "articulate a legitimate, non-discriminatory reason for its actions towards the employee." *Chalmers*, 101 F.3d at 1017-18 (citing *Moore v. City of Charlotte*, 754 .2d 1100, 1105-06 (4th Cir. 1985). If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show that the defendant's proffered reason is merely pretextual, and "that the employer's conduct towards [him] was actually motivated by illegal considerations." *Id.* at 1018. Despite the burden shifting, the ultimate burden of persuasion lies with the plaintiff. *Burdine*, 450 U.S. at 253 (cited in *Chalmers*, 101 F.3d at 1018).

In a case brought under the "failure to accommodate" theory, on the other hand, a plaintiff can establish a claim "even though [he] cannot show that other (unprotected) employees were treated more favorably or cannot rebut an employer's legitimate, non-discriminatory reason for [his] discharge" because the Title VII statute requires an employer "to an extent" to "actively attempt to accommodate an employee's religious expression or conduct even if, absent the religious motivation, the employee's conduct would supply a legitimate ground for discharge." *Chalmers*, 101 F.3d at 1018. In *Chalmers*, the Fourth Circuit adopted a set of required elements for establishing a prima facie claim for failure to accommodate. *Id.* at 1019 (citing with favor cases from other circuits). Under the *Chalmers* test, a plaintiff must establish the following: "'(1) he . . . has a bona fide religious belief that conflicts with an employment requirement; (2) he . . . informed the employer of this belief; [and] (3) he . . . was disciplined for failure to comply

Case 1:11-cv-00147-AJT-IDD Document 63 Filed 01/06/12 Page 12 of 15 PageID# 360

with the conflicting employment requirement.'" *Id.* (quoting *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)). Moreover, as the Fourth Circuit held in *Chalmers*, "a prima facie case under the accommodation theory requires evidence that [the plaintiff] notified [the defendant employer] that [his] religious beliefs required [him] to" engage in the conduct for which the plaintiff was disciplined or terminated. *Id.* (citing *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978)); *see also Cary v. Carmichael*, 908 F. Supp. 1334, 1342-43 (E.D. Va. 1995) (cited with approval in *Chalmers*, 101 F.3d at 1019) ("A plaintiff makes out a prima facie case of religious discrimination by proving: (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; and, (3) he or she was . . . fired, or otherwise discriminated against for failure to comply with the conflicting employment requirement."). If the plaintiff makes a prima facie case, including notifying the employer of the religious observance or belief at issue as required, the burden then shifts to the employer to "show that it could not accommodate the employee's religious needs without undue hardship." *Id.* (citing cases).

The Court finds that there is no direct evidence of discriminatory animus motivating plaintiff's termination, nor has the plaintiff met his burden of proof with respect to establishing a prima facie case for religious discrimination under either the disparate treatment or the failure to accommodate theory. A claim of disparate treatment by the plaintiff must fail because the plaintiff has not "prove[n] that his job performance was satisfactory," as required by the prima facie test under that theory. *See Lawrence*, 955 F.2d at 905-06. In contrast, defendant HIG has presented evidence of complaints by customers and co-workers against the plaintiff and instances of misconduct by the plaintiff, occurrences which the plaintiff has not disputed. *See generally* Ex. A to Def.'s Mem.; Ex. 3 to Pl.'s Opp'n. To the extent that the plaintiff disputes some of the

12

details of these occurrences, the Court finds that the facts which the plaintiff contests are not material, and the plaintiff has not created a genuine issue for trial. Furthermore, even if the Court were to find that plaintiff has established a prima facie case, the Court finds that the evidence does not support a finding of pretext. The defendant has articulated a legitimate, non-discriminatory reason for terminating the plaintiff's employment at HIG: "that Mr. Gonzalez was terminated for insubordination, inappropriate conduct, and a history of problems . . . ." Def.'s Mem. at 12. In response, the plaintiff has neither proven that this reason was false, nor has he presented facts that would allow a reasonable fact finder to conclude that religious discrimination was the real reason he was terminated. *See generally* Pl.'s Opp'n. Accordingly, under the *McDonnell Douglas* framework, the defendant is entitled to judgment as a matter of law on the plaintiff's claim of religious discrimination under the disparate treatment theory.

Similarly, the plaintiff's claim of failure to accommodate must fail because there is no evidence that plaintiff "notified [the defendant] that [his] religious beliefs required [him] to" engage in the conduct for which the plaintiff was terminated." *Chalmers*, 101 F.3d at 1019 (citing *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978)); *see also Cary v. Carmichael*, 908 F. Supp. 1334, 1342-43 (E.D. Va. 1995) (cited with approval in *Chalmers*, 101 F.3d at 1019) ("A plaintiff makes out a prima facie case of religious discrimination by proving: (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; and, (3) he or she was . . . fired, or otherwise discriminated against for failure to comply with the conflicting employment requirement."). The plaintiff asserts that his statements to Hogg, which he contends "revolved around religion, contained religious reference, and directly or indirectly invoked God," Pl.'s Opp'n at unnumbered page 7, were sufficient to place the defendant on notice of the need for accommodation, citing a decision

13

by the Court of Appeals for the Seventh Circuit. In that case, *Brown v. Polk County, Iowa*, 61 F.3d 650 (7th Cir. 1995), a plaintiff, who identified himself as born-again Christian, was fired. There, the Court of Appeals found that although the plaintiff had not specifically asked for a religious accommodation, because a prior reprimand of the plaintiff "related directly to religious activities by [the plaintiff], . . . the defendants were well aware of the potential for conflict between their expectations and [the plaintiff's] religious activities." 61 F.3d at 654. However, as the Fourth Circuit explained in *Chalmers*, while a plaintiff may not have an obligation to affirmatively notify his employer of his need for religious accommodation, an employer will only be considered to have sufficient notice for religious accommodation purposes if the employers has "enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." 101 F.3d at 1020 (quoting *Brown*, 61 F.3d at 654).

In *Chalmers*, the plaintiff claimed that "the notoriety of her religious beliefs within the company put [her employer] on notice of her need" to engage in the activities for which she was terminated, in her case, writing and sending accusatory letters to her co-workers' homes. *Id.* Yet, as the Fourth Circuit explained, "[k]nowledge that an employee has strong religious beliefs does not place an employer on notice that she might engage in any religious activity . . . ." *Id.* As the Fourth Circuit explained,

> Part of the reason for the advance notice requirement is to allow the company to avoid or limit any "injury" an employee's religious conduct may cause. Additionally, the refusal even to attempt to accommodate an employee's religious practices, prior to the employee's violation of employment rules and sanction, provides some indication, however slight, of improper motive on the employer's part. The proper issue, therefore, is whether Chalmers made [her employer] aware, *prior* to her letter writing, that her religious beliefs would cause her to send the letters.

14

*Id.* at 1020-21. In that case, the Court held that the defendant employer's knowledge of the plaintiff's religious beliefs did not put the employer on notice that the employee would take the specific actions she took as an expression of those beliefs. *Id.* at 1020, n.3. Similarly, here, even if defendant HIG was on notice that the plaintiff "ha[d] strong religious beliefs," 101 F.3d at 1020, defendant HIG was not on notice that those beliefs would compel the religious statements the plaintiff made at the workplace. The plaintiff thus has failed to satisfy the notice element of a prima facie case of religious discrimination under the failure to accommodate theory.

The plaintiff has failed to present facts sufficient to satisfy the applicable burden of proof for a claim of discrimination on the basis of religion in violation of Title VII. Accordingly, the Court finds that the defendant is entitled to judgment in its favor as a matter of law on the plaintiff's claims, and that the plaintiff is not entitled to judgment on his claims.

## CONCLUSION

For the above reasons, the Court will grant Defendant's Motion for Summary Judgment (Doc. No. 51), and deny Plaintiff's Motion for Partial Summary Judgment (Doc. No. 54). An appropriate Order will issue.

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
January 6, 2012

15